### REPLEVIN OF SAW LOGS.

Circuit Court of Lorain County.

WILLIAM CASE v. GEORGE KORTZ.

Decided, May 8, 1905.

*Tender—When Tender or Excuse for Not Tendering Purchase Price, a Question for the Jury.*

Where standing timber was sold at a certain price per M., the logs to be measured and paid for by check before being removed from the land; a partial payment made, and after the trees were cut but before they were measured or paid for the land was sold and the purchaser of the trees notified by the vendor of the land that the sale was made subject to his rights in the trees, and by the purchaser of the land that if he wanted the trees he must remove them within three days and pay for them in cash; in an action of replevin following the refusal of the purchaser of the land to allow the purchaser of the trees to come upon the land to measure them, the question for the jury is not as to the ownership of the trees but whether or not three days was a reasonable time in which to allow their removal and whether or not the act of the purchaser of the land excused the purchaser of the trees from making legal tender.

*I. E. Hershey* and *L. Z. Tanney*, for plaintiff.
*H. G. Redington*, contra.

WINCH, J.; MARVIN, J., and HENRY, J., concur.

Defendant in error brought his action before a justice of the peace to replevin from plaintiff in error four white oak saw logs.

The case being appealed to the common pleas court and petition therein filed, the defendant in that court filed his second amended answer in which he alleged the following facts:

"And for a second and further answer, this defendant says that on or about the —— day of November, A. D. 1901, he purchased of one Mary A. Stewart a certain lot of timber, among which is the timber described in plaintiff's petition; that said timber was standing at the time of said purchase, and that the agreement and terms of sale of said timber from Mary A. Stewart to this defendant was as follows, to-wit: that said timber was to be cut and scaled by this defendant and paid for by check, before the same was removed from the premises of the said Mary A. Stewart; that he was to pay for the same at the rate of sixteen dollars ($16) per thousand feet; that the same was to be scaled by this defendant and some lumberman from Cleveland.

"Defendant further says that at said time he paid to the said Mary A Stewart, the sum of five dollars ($5) to apply on said contract; that thereafter, to-wit, on or about the —— day of May, A. D. 1902, he went upon said premises and cut said timber, especially the timber mentioned or described in plaintiff's petition, that during the year of 1902, the season was such that it was impossible for him to remove said timber from said premises on account of the wet weather, or to do anything with the same.

"Defendant further says that as soon as the weather permitted, which was on or about the 23d of December, A. D. 1902, he went upon said premises and commenced to cut into logs and to scale timber among which was the timber described in plaintiff's petition; that before he finished cutting and scaling all of said timber, the plaintiff in this action ordered him from said premises and drove him from the same, and refused to allow him to take possession of said timber and said that he was the owner thereof."

Then follows an allegation of tender to a Mr. Carter, brother of Mary Stewart, alleged to be her agent, and also that the defendant was ready and willing to pay for the logs.

The reply filed to this amended answer has some admissions, and it is important to read them:

"The plaintiff George Kortz, for his reply to the second amended answer of the defendant filed in this case says, he does not deny that during the month of December, A. D. 1902, the said defendant entered upon the lands where the timber and logs described in plaintiff's petition were located, and that said defendant then commenced to cut said oak trees into logs, and this plaintiff admits that he refused to allow said defendant to

finish cutting said trees or timber into logs and that he then ordered the said defendant to leave said premises, and the plaintiff was then the owner of said premises and told the defendant so, and the owner of all said timber and logs, and the plaintiff admits that he then refused to give defendant possession of said timber and logs.

"The plaintiff further denies each and every other statement and averment in said second amended answer contained except such statements and averments as are admissions of the statements and averments contained in plaintiff's petition filed therein."

Upon these pleadings the case was tried to a jury, and upon the trial the following written communications were introduced in evidence:

"N. ROYALTON, O., November 8, 1902.
"WM. CASE,
    "West View, Ohio.
"*Dear Sir*: About one year ago you bought of Mrs. Mary Stewart some timber, to be immediately cut, scaled and paid for by check. You cut some and it lays on the ground where it fell, unscaled and unpaid. Unless she hears from you in a substantial way within ten days she will proceed to sell the timber to other parties. This is to so notify you.
                    "Respectfully yours,
                        "A. B. KNOX,
                            "*Justice of the Peace.* ·

"N. ROYALTON, O., Dec. 4, 1902.
"WM. CASE,
    West View, Ohio.
"*Dear Sir*: Mr. Carter refuses to accept your check which I enclose herewith and return to you. The place was sold last night to Mr. Kortz, as soon as Mr. Carter reached home, subject to whatever claims you may have on the trees you bought of Mrs. Stewart, and hereafter you will have to do business with Mr. Kortz and pay him for the timber.
                    "Respectfully,
                        "A. B. KNOX.

"PARMA, OHIO, December 17th, 1902.
"WM. CASE,
"*Dear Sir*: I have bought Mrs. Stewart's place in Strongville. If you want them oak trees you must come and see me inside

of three days or else they will be cut up into logs.    If you want them you must bring the money, or check for them seven trees cut down if scaled satisfactory.

                                        "GEORGE KORTZ."

We think the evidence clearly shows that Carter acted as agent for Mrs. Stewart, at least up to the time Knox wrote his second letter, and that Knox was duly authorized by both Mrs. Stewart and her brother, Mr. Carter, to send both of said letters.

The court held that Carter's agency for Mrs. Stewart ceased on or before December 4th, 1902, and that Knox's letter of that date was sufficient notice thereof to Case, and in so holding we think there was no error.

From the admissions in the pleadings and from the evidence it further appears that neither Mrs. Stewart or Knox ever tendered back to Case the five dollars which he paid her when the agreement regarding the trees was first made, and that Case never tendered to Mrs. Stewart or to Kortz, or to any person representing either of them the amount of money which he agreed to pay for the logs.

Notwithstanding Case's delays in carrying out the agreement for the purchase of the logs, it is apparent that the contract with him was never rescinded, because his five dollars was never returned to him.    The option of the vendor, Mrs. Stewart, under such circumstances, to resell on notice, or to retain title, holding the vendee for any deficit, we also think was never exercised.

Mrs. Stewart sold the land upon which the logs were lying to Kortz, but she did not sell him the logs and credit Case with the consideration for them on his contract.    The letter of December 4, 1902 says:

"The place was sold last night to Mr. Kortz *subject to whatever claim you may have on the trees you bought of Mrs. Stewart.*"

In legal effect said agreement was an assignment of her contract to Kortz so that he took Mrs. Stewart's place and assumed and agreed to carry out the contract with Case.    Such being the case, we think that Case was relieved from making tender to Mrs.

Stewart after December 4th, 1902, but as the evidence in the case clearly shows that the purchase price of the logs was to be paid as soon as the logs were cut and scaled, it is manifest that Case was not entitled to possession of the logs until he paid Kortz or tendered to Kortz; whether such tender was excused by Kortz driving Case off the land, when he went there to scale the timber, depends upon the reasonableness of his notice of December 17, in which he said, "If you want them oak trees you must come and see me inside of three days or else they will be cut into logs." Kortz had a right to set a reasonable time within which Case should scale and pay for the logs, and if Case did not act, to dispose of the trees as he saw fit, crediting their value on what was realized for them on Case's contract. The reasonableness of the time set, together with the reasonableness of the time within which Case acted, if the three days were not reasonable, should have been left to the jury under proper instructions.

This was not clearly done, and the question of tender was not touched upon by the court, notwithstanding defendant made a request as follows:

"On general principle, whenever an act of one party, to whom another is bound to tender money, services or goods, indicates clearly that the tender, if made, would not be accepted, the other party is excused from technical performance of his agreement. The law never requires a vain thing to be done."

The troublesomeness with the charge is, that it deals entirely with the question of *ownership* of the logs, rather than with the right of *possession* thereof.

Granting that title to the logs passed to the vendee when the trees were severed from the land, confessedly the vendor was to retain possession of them until the vendee paid or offered to pay for them.

The only questions of fact which were in dispute and for the jury to determine were, whether Case had paid for the logs, tendered payment or been excused from making tender. If none of these facts were established, Case was not entitled to the pos-

session of the logs, and had no right to take them away. If they were established, the plaintiff must fail in his case.

The jury should have been restricted in its inquiry to these simple propositions. That it was not, was largely the fault of counsel for plaintiff in error, whose theory of the case seems to depend upon the question of title, and whose requests to charge, while in the main correct as elementary or abstract principles of law, had little reference to the real issues in the case, and no pertinent application to the facts as conceded or shown in the evidence.

We find no prejudicial error in rulings on evidence and hold that defendant's objections based upon the fact that plaintiff in replevin filed no new affidavit in the common pleas court, are not well taken; but for error in the charge in the respect mentioned, the judgment is reversed.